Good morning, Your Honors. Good morning. May it please the Court, I'm Richard Hine for the petitioner, and I would like to reserve two minutes for rebuttal. This is another adverse credibility case. The IJA made their decision based on finding six adverse credibility factors, and the BIA adopted that decision. We'll try to work through all the factors in turn, and I'm going to go in reverse order, beginning with the medical evaluation. Can you speak up a little? Sorry, beginning with the medical evaluation. Could you begin with the business of whether he was a worker or a member? You would like me to begin with that, Your Honor? Yes. Okay. So the IJA faulted Mr. Singh. Yes. Because he himself introduced that distinction, right? He was questioned as to whether or not he was a member of the Mon Party in his credible fear interview, and then he responded, no, but I am a supporter and I've been doing all the activities that workers have been doing. And then it changed to where he's a worker, that he's a member. And he submitted all sorts of documentary evidence that he was a member. Well, other than that one statement in the credible fear interview, he never wavered from his statement that he was a member. There was documentary evidence as far as the statement, the Man Party letter, written application for asylum indicates that he was a member. Yes, and he always affirmed that he was a member. I would say that the asylum officer's notes in the credible fear interview are unreliable, and this Court has made similar findings in regards to bond hearings and airport interviews. It was not a verbatim transcript of what he was saying. It was notes made for a base credible fear determination. And Mr. Singh explained himself that he did not understand the difference between member and supporter at the time the question was asked. That's what I'm saying. He, at least according to the notes, I guess, is your point. But the notes suggest that he is the one who introduced that distinction. It wasn't suggested to him. It wasn't even part of the question. I don't even remember what the question was. But he's the one who kind of set up this dichotomy between strong supporters, which he was, and members, which he said he was not. So it's not like he could have been confused because he himself laid out the two categories, right? Well, I think there was clear confusion because even later on in the credible fear interview when he's asked during the asylum bar questions whether or not he's been a member of an organization or group, he says no, only the Simran Jinn Singh Mon Party, which to me is him introducing a distinction that, no, he's not a member of any other groups, but he is, in fact, a member of the Mon Party. And so I would say that if I— You argue in your brief that the explanations were different because there's not a significant difference in the Punjabi language between the words member and supporter. It was not offered by Singh. It's offered by you. And there was a Singh interpreter at the hearing who could have been asked whether the words were similar or synonymous. And nobody said—nobody asked. I believe it should have been asked, Your Honor, because clearly at the moment we don't know the difference between the words. So it was not asked at the hearing, though. What about the others? The others, including his testimony about the date of his first attack, the IJ faulted Mr. Singh for testifying on direct that he was first attacked on June 10, 2011. I'd say Mr. Singh was never inconsistent that he was attacked multiple times, including in 2010. The IJ drew a negative inference from the asylum officer's notes indicating that Mr. Singh was first attacked shortly after joining the Mon Party in 2010, and for Mr. Singh's own written application, which described being attacked shortly after joining the Mon Party. But the question that I remember being put to him was when was—this is—is this his uncle who was—I can't even remember now. It was a family member who was— Oh, sorry, yes. His uncle was the man who was attacking him. Yeah, yeah. And the question was when was the first time he did this to you. So no qualifiers in terms of severity of the attack, just when was the first time. And he gave diametrically inconsistent answers, 2010 v. 2011, right? I believe the question was when he was first attacked by on direct— I wrote down, put it in quotation marks, so I'm hoping that I got it from the transcript. It says when was the first time he, meaning the uncle, did this to you. I can't remember what the preceding questions were, but it was along the lines of whatever abuse he was claiming he had suffered at the hands of the uncle. I think the explanation then you offer here is that, well, he was confused that maybe he thought like when was the first severe beating or something, and that just wasn't the question. But I would say that the I.J. failed to consider his explanation, though, even, that he placed particular significance on the 2011 and 2013 attacks. So when he was testifying, he was testifying to the times he was most severely harmed. And I would also argue that even, that he wasn't, contrary to what the I.J. decision says, that Singh wasn't even adequately confronted on the discrepancy in his testimony. Didn't he claim that the first attack, both in his written application and in his credible fear interview, that the first attack was shortly after he joined the Man Party in 2010? So I sort of regarded that as significant on the issue of whether he was actually a member of the party. I mean, it seems to me to be tied with the first statement. So are you saying if he was not a member at the time? No, he's saying in his written application and his credible fear interview, he said the first attack was shortly after he joined the Man Party in 2010, which suggests that he was a member. Correct. Which is contrary to what he had previously said. Well, I mean, other than that one statement in the credible fear interview, he has never wavered from the fact that he was, in fact, a member of the party. The IJ failed to consider anything other than that one statement. He didn't consider his written application about his membership. He didn't consider his father's letter. He didn't consider a letter from the Man Party. He didn't consider the applicant's testimony. He didn't even consider another statement later on in the same credible fear interview that seemingly saying that I am, in fact, a member of the Man Party. So I think that is where the IJ faulted his decision about the membership issue. And then also another issue was the amount of times he was attacked by the uncle. That was determined as an adverse credibility factor. And the IJ faulted him for not referencing in his written application for relief any attacks besides three specific ones, the June of 2011 attack, the January of 2013 attack, and the unnamed attack shortly after joining the Man Party. It's simply untrue in his I-589, Mr. Sinks stated, that he was attacked, that his uncle attacked me several times, including badly injuring me in 2011 and 2013. And this, sorry, apologies for my earlier statements. This was the issue that I don't believe he was adequately confronted on, because the IJ questioned him about the number of times he was beaten between and Mr. Sphinx responded in the questions that he was attacked many times, lots of times, and he finally clarified that he had been attacked by them at least 10 to 15 times. He gave a reasonable and plausible explanation, one question as to why his father's affidavit only described Sinks suffering two attacks, and the IJ had to provide a specific and cogent reason for rejecting the explanation and failed to do so. While the IJ didn't have to give a point-by-point reasoning on this issue, I do believe he was required to give something more than the Respondent was not able to provide anything in the nature of a satisfactory explanation. Roberts. Do you want to save the balance of your time for rebuttal? I would, yes, Your Honor. Okay. Let's hear from the government. Thank you, Your Honor. Good morning, Your Honors. Manuel Palaf with the Respondent in this case. The evidence here does not compel the conclusion that Mr. Sinks testified credibly before the immigration court. The immigration judge and the board flagged a number of inconsistencies, all of which went to the heart of his claim, which is not required under the Real ID Act. First of all, there's a question of when did his uncle first attack him. He said twice. It happened right in 20 — right after I joined the party in 2010. On direct examination at his hearing, he was asked when was the first attack. He said June 10th of 2011. That's a black-and-white inconsistency. The first time — you said he said twice that it was 2010. When was that in — when was that? Okay. Credible fear interview and also his asylum declaration, he said that. 2010 in his declaration? Yes. Yes, in his declaration, my notes say he said right after he joined the party and then again on June 10th, 2011, in his declaration. And then when he was asked that question at the hearing, he just flat-out said June 10th of 2011 was the first time his uncle attacked him. So that's an inconsistency that goes to the heart of his claim, which is not required, as I stated, because it calls into question the motive for the attack. He said previously his uncle became enraged when he joined the party. That was in 2010. Yet he says in testimony, sworn testimony, that it happened 2011, a year later. Turning to the membership issue, am I a member or a supporter? As Your Honor noted, he was asked, are you a member? And for some reason, which is not evident from the record, he answered no. That's pretty definitive. I'm a supporter, not a member. And then he said how supporters and members differ. There is evidence in the record that he is a member, was a member in 2010. So that creates an inconsistency between his testimony and his documentation, which is the basis for an adverse credibility determination. I don't know why he drew the distinction, but he brought it up unequivocally and he brought it up on his own. And that just does not give the finder of fact any confidence that he's telling the truth about his membership. So that's the question. I know the answer that you're about to give, but what difference does it make? It makes. Even if it had been bad, he would have? Again, Your Honor. I know you're going to tell me it doesn't have to go to the high city. That's what I'm going to tell you. The issue before the Court is not the merits of his claim. The issue is. It just bothers me, that's all. I can tell. I'm feeling that. The inquiry here is much narrower. Did he tell the truth? Is there — does this record compel the conclusion that he testified truthfully? There's a number of holes in this gentleman's testimony, the two which I've addressed. Others are how many times were you attacked? He left the immigration judge confused about that because he said flat out, I'm confused. I need to clarify things. You keep testifying of two big attacks, so how many times were you assaulted? His response, quote, twice I've been. I was beaten up by them, which were big attacks. I'm not talking about big or small. I'm talking about all attacks. His people beat me up quite a many times and my uncle, too. How many times? Now I'm paraphrasing a bit. Lots of times. What's wrong with that? He said lots of times. Yes. He explained the reason he mentioned the first two was because they were the worst. That's correct, but nobody asked him who were your worst attacks or tell me about your worst attacks. Tell me about your attacks. The question was unequivocal. How many times were you attacked, period? I don't think there's no ambiguity there. And so that's a justification after the fact. When he expands his answer, it's from two to 15 or many. His explanation is, oh, I thought you asked me only about the serious or severe attacks. And that's simply not what was asked, Your Honor. So we misunderstood the question. That's your take on it, respectfully. The IJ, I think these are all valid inconsistencies that support an adverse credibility determination. Remind me, what was the issue with whether his father was attacked as well? There was some conflict there? I wouldn't call it a flat-out conflict. At the border interview, he said my father was also beaten. In his declaration, he didn't mention an attack on the father. In his father's statement to him, he didn't mention being attacked. And then on cross-examination, Mr. Singh said my father was beaten. That's an inconsistency, but I will agree that the middle two are more like omissions. I understand why that might not be quite as probative a credibility, and also it's something that happened to a third party, not him. But I thought there was something about his lawyer trying to correct, and I just could not figure out what happened there. Well, that makes two of us. I don't know what his objection was, Your Honor. He disputed a statement at the border interview that I believe that when Mr. Singh said that his father was also beaten, his counsel took issue with that and said he didn't say that. And that's as far as it went. But then he said, but it did happen, right? Yes, sir. Okay. I mean, on cross-examination, he said, yes, my father was beaten. Okay. So that's ñ I didn't quite know what to make of that myself. There's also ñ I would also point out that between the border interview, the critical fear interview, he enhanced his claim. Before the border patrol at the first interview, which was the day after he was apprehended, he was asked about his claim. He said, my uncle wants my land. My uncle beat me. I have no other fears in India. Two weeks later, credible fear interview, same thing, but then he says, my uncle wants me to quit the Man Party. Now he adds a brand-new political element to his claim, which we believe is an enhancement not required for an adverse credibility finding, but it's an enhancement nonetheless. So I think that's also something that needs to be considered in the mix. So there are other ñ two others. I don't want to go down the whole laundry list. But the last one I'll mention is whether the police have ever threatened to jail him when he reported the beating by his uncle to them. At first, his testimony back in ñ when he ñ the credible fear ñ I'm sorry, both of the border interview and the credible fear interview two weeks later, he did not mention that the police threatened to jail him because he reported his uncle's attack to them. On direct testimony, he said the police threatened to jail him if he persisted in reporting his uncle to them. Again, an enhancement not required, but I think it gives you the tenor, and I just don't see how this record would give any reviewer confidence that ñ or compel the conclusion that he testified truthfully in his claim before the Court. That's what I got. Anything further, I'll ñ thank you, Your Honors. Roberts. Thank you. We'll hear from rebuttal from Petitioner's counsel. You've got about a minute and a half left. Thank you, Your Honors. I would just like to address quickly the alleged enhancement of the original claiming that his uncle was after his land and then changing to a political in his adverse credibility finding, and I don't think it should be weighed as such in this decision. How about your statement when you first came up? You said, I thought, that the only time he had ever said the first attack was in 2010 was in the asylum officer interview, and those notes are not reliable. But his declaration does say, I think, I became a member of the Mann Party in November of 2010, and then the statement is, just after I joined the party, I was confronted an attack by my uncle. So doesn't that suggest that in his sworn declaration, not just these unreliable asylum officer interview notes, that he himself said that the first attack was in 2010? Regarding the attack, yes, I thought my comments were about when he was saying ñ the only time he made a statement saying that he was not a member of the party. But regarding the attack ñ No, I thought we were talking about the date of the first attack. Am I getting that confused? I thought it was 2010 versus 2011. You said the only time he had ever said it was in 2010 was in this unreliable asylum officer interview. And I'm looking at his sworn declaration. It seems to say in that, that the first attack was in 2010. I apologize, then, if I misspoke in my earlier argument, because he did say in his written ñ because he did say in the declaration that he was attacked shortly after joining the Mann Party as well. In 2010. In 2010, correct. And then on direct, didn't he say ñ or I don't know if it was direct or cross, but at the hearing he said, no, the first attack was in 2011, right? It was on direct, Your Honor, yes. And he said the first time he was attacked or harmed by his uncle was in 2011. So isn't that just an inconsistency, that the IJ could rely on that? I don't believe it is, Your Honor, because he's never been inconsistent that he was attacked multiple times, including the June 2010 attack ñ or the 2010 attack shortly after joining the Mann Party. And then the 2011 and 2013 attacks, he testified that he was attacked multiple times and that he put a particular significance on the times when he was harmed the most, which were the 2011 and 2013 attacks. Okay. You've exceeded your time. Yes, I have, yes. Thank you, counsel. The case just argued will be submitted.
judges: Schroeder, Watford, Korman